UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| ARTHUR M. SANCHEZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:10-cv-01460 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | [Re: Motion at Docket 16] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. MATTER PRESENTED

At docket 1, plaintiff Arthur M. Sanchez ("plaintiff" or "Sanchez") seeks review of Administrative Law Judge ("ALJ") John W. Wojciechowski's denial of disability insurance benefits. Plaintiff's opening brief is at docket 16. Defendant Michael J. Astrue ("Commissioner" or "Astrue") responds at docket 21. Plaintiff's reply is at docket 29. Oral argument was requested but would not assist the court.

## II. BACKGROUND

### A. Procedural Background

Sanchez filed for disability insurance benefits and supplemental security income in December 2006. Sanchez experienced knee pain beginning in November 2006. Plaintiff's applications were denied after review by the Social Security Administration

and again after reconsideration.[1] Sanchez requested a hearing before an ALJ. A hearing was held on September 2, 2009. The only witnesses at the hearing were Sanchez and a vocational expert. On December 10, 2009, the ALJ issued a decision in which he found that Sanchez was not disabled. The Appeals Council denied Sanchez's subsequent request for review.

**B. Medical Background**

Sanchez was age 42 when he filed his claims and age 45 at the time of the hearing. He has an eighth grade education and previously worked in a fertilizer plant. In December 2006, an MRI of Sanchez's right knee showed "degenerative changes . . . with osteophytes," "significant chondrosis," a medial collateral ligament sprain, a meniscus tear, and other problems.[2] Sanchez was referred to an orthopedist.

Michael Chieco ("Chieco""), a physician's assistant, assessed Sanchez's condition as "[e]nd-stage osteoarthritis [in] both knees with bone-on-bone articulation medially and fixed varus deformity."[3] Chieco believed that Sanchez's only treatment option was "total knee arthroplasties"–or total knee replacement surgery. Dr. Steven Myrthall agreed with Chieco's assessment.[4] Sanchez opted instead to undergo "a five injection series of Supartz viscosupplementation."[5] Sanchez received three injections and experienced no change in his symptoms.

---

[1] A.R. 63–69, 73–78.

[2] *Id.* at 242–43.

[3] *Id.* at 254.

[4] *Id.*

[5] *Id.*

On April 12, 2007, Sanchez saw Dr. Howard Norman ("Norman") for a state disability evaluation. Norman determined that Sanchez's knee problems would restrict his ability to lift and carry, and stand or walk in an eight-hour workday, but not entirely.[6] In June 2007, Sanchez saw Dr. Keith Cunningham ("Cunningham"), in connection with his federal application for benefits. Cunningham concluded similarly.[7]

On June 22, 2007 and November 30, 2007, Sanchez respectively saw state agency physicians Dr. Thomas Glodek ("Glodek") and Dr. Thomas Disney ("Disney"). Glodek and Disney both agreed that Sanchez could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for up to four hours; sit for approximately six hours; occasionally climb stairs and balance; and never climb ladders, ropes, or scaffolds in an eight-hour workday. Glodek opined that Sanchez could occasionally stoop, kneel, crouch, and crawl. Disney opined that Sanchez could never kneel, crouch, or crawl.[8]

Sanchez saw a different orthopedic specialist in January 2008. Dr. Gregory Sirounian ("Sirounian") reported "severe degenerative changes with complete loss of medial joint space in both knees."[9] Sirounian also believed that knee replacement surgery would be appropriate, but Sanchez elected to undergo Supartz injections again.[10]

---

[6] *Id.* at 245–47.

[7] *See id.* at 271–79.

[8] *Id.* at 282–89, 293–300.

[9] *Id.* at 305.

[10] *Id.*

Sanchez saw Dr. Michael Keller, a primary care physician, on June 2, 2009. Keller opined that "[d]ue to multiple medical problems . . . this patients [sic] is . . . permanently dissabled [sic]."[11]  Sanchez followed up with Sirounian on June 17, 2009. X-rays showed "advanced degenerative changes with complete loss of medial joint space" in both knees.[12]  Sanchez elected to receive additional Supartz injections.

## C. The ALJ's Decision

In evaluating whether a claimant is disabled, an ALJ applies a five-step process.[13]  At step one, the ALJ found that Sanchez had not performed substantial gainful activity during the relevant period.  At step two, the ALJ found that Sanchez suffered severe impairments–"bilateral knee degenerative joint disease and nonsevere diabetes mellitus."[14]  At step three, the ALJ found that plaintiff was not presumptively disabled.  In between steps three and four, the ALJ found that Sanchez had "the residual functional capacity to perform sedentary work."[15]  At step four, the ALJ found that Sanchez could not return to past relevant work.  Finally, at step five, the ALJ found that "[b]ased on a residual functional capacity for the full range of sedentary work, [and] considering the claimant's age, education, and work experience, a finding of 'not disabled' [was] directed by Medical-Vocational Rule 201.28."[16]

---

[11] *Id.* at 315, 318.

[12] *Id.* at 303.

[13] 20 C.F.R. § 404.1520; *see Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

[14] A.R. 53.

[15] *Id.*

[16] *Id.* at 57.

### III.  STANDARD OF REVIEW

A district court reviews an ALJ's denial of disability insurance benefits pursuant to 42 U.S.C. § 405(g).  The district court may set aside the Commissioner's determination if it is unsupported by substantial evidence or based on legal error.[17]  Substantial evidence is more than a scintilla, but less than a preponderance.[18]  It can be viewed as "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."[19]  The court will uphold the Commissioner's conclusions where the evidence is susceptible to more than one interpretation and will not reverse for harmless error.[20]  Harmless error is error that was "inconsequential to the ultimate nondisability determination."[21]

### IV.  DISCUSSION

**A. Presumptive Disability**

**1. The ALJ's failure to explain his conclusion that Sanchez's condition did not meet or equal a listed impairment was error**.

Sanchez argues that the ALJ erred at the third step of the sequential evaluation process when he concluded that Sanchez's condition did not meet the criteria for

---

[17] *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

[18] *Id.*

[19] *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotations omitted).

[20] *Id.*

[21] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006).

presumptive disability.[22] To qualify as presumptive disability under Listing 1.02A, joint problems must involve "one major peripheral weight-bearing joint . . . resulting in inability to ambulate effectively."[23] "Inability to ambulate effectively" is defined elsewhere to mean "an extreme limitation of the ability to walk."[24]

The ALJ found that Sanchez did "not have an impairment . . . that [met] or medically equal[ed] one of the listed impairments" that constitutes presumptive disability.[25] The ALJ did not provide any analysis, but stated that he had "considered listing 1.02A."[26] "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment.[27] The ALJ's finding was boilerplate. The Commissioner concedes that the ALJ erred, but argues that the error was harmless.[28] Because of the nature of the error, it is impossible to determine whether the error was harmless. If the ALJ's grounds were themselves erroneous, it does not matter whether there is substantial evidence on which the ALJ's finding could have been based–a reviewing court "may not affirm the ALJ on a ground upon which he did not rely."[29]

---

[22] See 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404, subpt. P, app. 1.

[23] 20 C.F.R. 404 subpt. P, app. 1, § 1.02A.

[24] Id. § 1.00B2b(1).

[25] A.R. at 53.

[26] Id.

[27] Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

[28] Doc. 21 at 11.

[29] Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**2. Failure to consider testimony regarding equivalence was not error.**

Sanchez argues that the ALJ erred by not calling a medical expert to address equivalence. As defendants point out in their response, an ALJ "must obtain an updated medical opinion from a medical expert" only when "no additional medical evidence is received, but . . . the case record suggest[s] that a judgment of equivalence may be reasonable" or when new evidence is received that may alter the state agency's determination.[30] Whether the criteria mandating additional testimony regarding equivalence are met is within the discretion of the ALJ.

## B. Dr. Keller's Opinion

Sanchez argues that the ALJ erred by not discussing Keller's opinion that Sanchez was permanently disabled.[31] Sanchez notes that "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."[32] The Commissioner argues that there was no error because the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."[33] Dr. Keller's opinion is brief, but while there may have been legitimate reasons for rejecting it, the ALJ did not specify his. That was error. The Commissioner insinuates that Keller was not a treating physician but does not advance the argument.

---

[30]SSR 96-6p, 61 Fed. Reg. 128 (July 2, 1996).

[31]A.R. at 315, 318.

[32]*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

[33]*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**C. Opinion of Michael Chieco**

Sanchez maintains that the ALJ erred by giving less weight to the opinion of Michael Chieco, a physician's assistant, because he was not a physician. Because the ALJ did evaluate Chieco's opinion, the only question is whether the ALJ erred by discounting it in favor of opinions from "acceptable medical sources."[34]

Attributing greater weight to an opinion from a medical source that is not an acceptable medical source is only appropriate under some circumstances–for instance, "if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."[35] Giving greater weight to an opinion from a medical source that is not an acceptable medical source is also explicitly fact-dependent.[36] The authority cited by Sanchez does not support the proposition that it is error to give such an opinion less weight when opinions from acceptable medical sources are available, as they were here.

**D. Sanchez's Education**

The ALJ found that Sanchez had "at least a high school education."[37] It is apparent from the record that Sanchez completed the eighth grade, but did not complete the ninth grade.[38] The Commissioner argues that the error was harmless.

---

[34] *See* SSR 06-03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006).

[35] *Id.*

[36] *Id.*

[37] A.R. 57.

[38] *See, e.g.*, *id.* at 20.

The ALJ applied Medical-Vocational Rule 201.28.[39] That rule applies to individuals limited to sedentary work, who are between the ages of 18 and 44, have a high school education, and previous skilled or semi-skilled work experience whose skills do not transfer. The Medical-Vocational Guidelines could only compel a finding of "disabled" if Sanchez were illiterate *and* if he were age 45 or older during the relevant period.[40] Sanchez turned 45 approximately three months before the hearing.[41] Although the ALJ did not make a finding with respect to literacy, it is clear that the ALJ considered Sanchez to be a "younger individual age 18–44" for purposes of the Medical-Vocational Guidelines.[42] Although the age categories are not applied "mechanically in a borderline situation," each applicable age category should be considered.[43] Because both age categories apply, and one compels a finding of "disabled" if Sanchez is illiterate, a finding as to Sanchez's literacy and re-application of the Medical-Vocational Rules is required.

**E. Rejection of Sanchez's Symptom Testimony**

Sanchez argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected his testimony. In determining whether a claimant's testimony is credible, an ALJ must follow a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

---

[39] 20 C.F.R. 404, subpt. P, app. 2, tbl. 1, § 201.28.

[40] *Id.* §§ 201.17, §§ 201.23–28.

[41] *See* A.R. 57.

[42] *Id.*

[43] 20 C.F.R. § 404.1563(b).

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[44] If the claimant has, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[45]

The ALJ's decision provides as follows:

After careful consideration of the evidence, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[46]

The ALJ then stated that Sanchez "is [only] partially credible [because] the severity of the limitations alleged . . . is not fully supported by the objective medical evidence."[47] The ALJ discounted Sanchez's credibility because limitations on his daily activities could not be independently verified and because, if Sanchez's characterization of his limitations were correct, the ALJ could not convincingly attribute those limitations to the impairment "as opposed to other reasons."[48] Both of the latter reasons *assume* that Sanchez was not entirely credible and, consequently, cannot be considered reasons at all. In any event, they are neither clear nor convincing. Limitations on daily activities will seldom be subject to independent verification and a "claimant need not . . . produce

---

[44]*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted).

[45]*Id.* (internal quotations omitted).

[46]A.R. 53.

[47]*Id.* at 54.

[48]*Id.*

objective medical evidence of the causal relationship between the medically determinable impairment and the symptom."[49]

The only potentially valid reason advanced by the ALJ for discounting Sanchez's testimony is conflict with the residual functional capacity assessment. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's testimony."[50] However, case law suggests that there must be consensus in the medical record and that the contradiction must be explicit.[51] Moreover, whether a claimant's testimony is credible more commonly turns on, "for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying . . . (2) unexplained or inadequately explained failure to seek treatment . . . and (3) the claimant's daily activities."[52]

Sanchez cites *Robbins v. Soc. Sec. Admin.*[53] for the proposition that inconsistency with the record is an impermissible basis to discount a claimant's testimony. However, the Social Security ruling on which the relevant language was

---

[49]*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

[50]*Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

[51]*See, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (rejection of claimant's testimony not supported because there was no consensus in the medical record); *Carmickle*, 533 F.3d at 1161 (rejection of claimant's testimony supported because there was express conflict as to how often claimant could lift 10 pounds).

[52]*Smolen*, 80 F.3d at 1284.

[53]466 F.3d 880, 884 (9th Cir. 2006).

based forbade discrediting of a claimant's testimony based on the absence of affirmative support in the record–a concept distinct from conflict with the record.[54]

*Lingenfelter v. Astrue* is more closely on point insofar as it involved a record devoid of "consensus of medical opinion that [the claimant], contrary to his alleged pain and limitations, retained the capacity to perform sedentary work."[55] Here, two state agency physicians were of the medical opinion that Sanchez could perform sedentary work. There is conflicting evidence–Keller's opinion, Chieco's opinion, and Sanchez's testimony all suggest otherwise. Because Keller's opinion was not even considered, the ALJ should reassess Sanchez's testimony.

## F. Remand For Further Administrative Proceedings is Appropriate

Because there are outstanding issues that must be resolved before a determination of disability can be made, remand for further administrative proceedings is appropriate.[56]

## V. CONCLUSION

For the reasons above, the case is **REMANDED** to the ALJ for the following:

1) Specification of the grounds for finding that Sanchez's condition did not meet the criteria under Listing 1.02A or was not medically equivalent.

---

[54]SSR 96-7p, 1996 WL 374186, at *1. The ruling states explicitly that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence." *Id.* Some language from the ALJ's decision suggests that he improperly discredited Sanchez based on the absence of affirmative support, but other language is specific enough in its reference to the residual functional capacity assessment.

[55]*Lingenfelter*, 504 F.3d at 1036.

[56]*See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998).

2) Consideration of Keller's medical reports.

3) A finding as to Sanchez's literacy and re-application of the Medical-Vocational Guidelines given Sanchez's actual education.

4) Re-assessment of Sanchez's testimony regarding the severity of his symptoms.

DATED this 23rd day of August 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE